IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| THOMPSON RESEARCH GROUP, LLC, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:17-cv-01595 |
| | ) | |
| WINNEBAGO INDUSTRIES, INC., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE HOLMES |
| Defendant. | ) | |

# MEMORANDUM

## I. Introduction

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 48); Plaintiff's Response (Doc. No. 62); and Defendant's Reply (Doc. No. 73). For the reasons set forth herein, Defendant's Motion (Doc. No. 48) is **GRANTED** in part, and **DENIED** in part. The Court grants summary judgment on the fraudulent and negligent misrepresentation claims, and denies summary judgment as to all other claims.

Defendant's Motion to Disregard or to Strike (Doc. No. 74) is **DENIED,** as moot, as the Court did not consider the disputed evidence in reaching its decision.

## II. Factual and Procedural Background

Plaintiff Thompson Research Group, LLC ("TRG") alleges Defendant Winnebago Industries, Inc. ("Winnebago") refused to pay it fair compensation for its role in initiating Winnebago's acquisition of Grand Design RV, LLC ("Grand Design"). (Doc. No. 1). Plaintiff

asserts claims for breach of contract, breach of implied contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. (*Id.*)

TRG is a firm owned by Kathryn Thompson and Chris White that provides equity research, sell-side research, corporate advisory, and consulting services. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶ 1 (Doc. No. 63) (hereinafter "Plaintiff's Response to Facts")). Winnebago is a publicly-traded corporation that manufactures recreational vehicles. (*Id.* ¶ 2). Grand Design manufactures travel trailers and fifth-wheel products, commonly known as "towables." (*Id.* ¶ 3). In October, 2016, Winnebago publicly announced its acquisition of Grand Design. (Doc. No. 9 ¶ 31). The parties vehemently disagree about the facts leading up to that acquisition, and whether TRG is entitled to a "finders fee" for its involvement.

Through the pending motion, Winnebago seeks summary judgment on Plaintiff's claims. To support its motion, Winnebago has propounded 116 statements of "undisputed" material facts, most of which are "disputed" by TRG. (Doc. No. 63). Winnebago also seeks to strike several of TRG's responses, as well as other items of evidence filed by TRG in response to the summary judgment motion. (Doc. No. 74). As discussed herein, with the exception of the fraudulent and negligent misrepresentation claims, even if the Court disregards the evidence challenged by Winnebago, resolution of this case requires a determination of disputed facts and inferences to be drawn from those facts, as well as credibility determinations, all of which are to be made by a jury.

### III. <u>Analysis</u>

**A. <u>The Standards Governing Motions for Summary Judgment</u>**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). The court does not make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

**B. Breach of Contract**

Although they do not directly address the issue, the parties appear to agree that Tennessee law applies to Plaintiff's claims. The parties also agree that, under Tennessee law, a party may enforce an oral contract if the party demonstrates: (1) the parties mutually assented to the terms of the contract, and (2) these terms are sufficiently definite to be enforceable. *Burton v. Warren Farmers Co-op.,* 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002).[1] The mutual assent "need not be

---

[1] Winnebago takes the position that in the case of a "finder's fee" contract, a plaintiff must show, in addition to these elements, that the plaintiff actually brought together ready and willing parties who engaged in negotiations, and that the introduction was the "procuring cause" of the transaction. (Doc. No. 49, at 17). To support this assertion, Winnebago cites a Tennessee district court case, which relies on New York and New Jersey law, and does not use the term "procuring cause." *Coleman v. Dover Corp.,* 384 F. Supp. 1401, 1403 (E.D. Tenn. 1974). Winnebago also cites a New York district court case applying New York law, *Moore v. Sutton Res., Ltd.,* 1998 WL 67664, at *4 (S.D.N.Y. Feb. 18, 1998), and a Tennessee Court of Appeals case analyzing "the rights of real estate brokers to a commission where the sale is actually closed by the owner or another agent." *Pacesetter Properties, Inc. v. Hardaway,* 635 S.W.2d 382, 385 (Tenn. Ct. App. 1981). In its Reply brief (Doc. No. 73, at 2), Winnebago cites a First Circuit case applying New York

3

manifested in writing," and may be manifested "in whole or in part, by the parties' spoken words or by their actions or inactions." *Id.* The mutual assent "should not, however, be inferred from the unilateral acts of one party or by an ambiguous course of dealing between the parties from which different inferences regarding the terms of the contract may be drawn." *Id.* Additionally, mutual assent "may not rest solely on the uncommunicated intentions or states of mind of the contracting parties." *Id.*

Having reviewed the voluminous filings by the parties, the Court concludes that genuine issues of material fact preclude summary judgment on this claim, particularly as to the question of whether the parties mutually assented to definite terms. Plaintiff has presented evidence that representatives from TRG, Grand Design, and Winnebago communicated with each other beginning in August 2015. The participants to those communications do not agree about what was said, or about the inferences to be drawn from the statements made. (*See, e.g.,* Deposition of Kathryn Thompson, at 67-68, 176-78, 203-04 (Doc. No. 64-10) (conversations by TRG with Grand Design regarding possible merger with Winnebago); Deposition of Ron Fenech, at 17, 103, 109-110, 122-23 (Doc. No. 51-12) (denying Grand Design expressed interest in a merger, and that TRG had a role in the merger); Deposition of Chris White, at 218, 236-39 (Doc. No. 64-11) (conversations by TRG with Winnebago about acquisition opportunity and statements/inferences that TRG would be paid to disclose acquisition partner); Deposition of Sarah Nielsen, at 60-61, 69-70, 75-76, 79-87 (Doc. No. 64-8) (denying discussions detailed TRG being paid for information about acquisition partner). Indeed, one of Defendant's "Statements of Undisputed Facts" concedes

---

law on this point. *Karelitz v. Damson Oil Corp.,* 820 F.2d 529, 531 (1st Cir. 1987). The Court is not persuaded these cases apply to a contract claim under Tennessee law that does not involve a real estate broker.

4

as much: "Sarah Nielsen disputes Mr. White's version of the January 14, 2016 conversation." (Plaintiff's Response to Facts, ¶ 21).

The Sixth Circuit has recently explained that summary judgment is not appropriate where the import and meaning of a party's words in context are in dispute, or when different reasonable inferences may be drawn from undisputed facts. *Slinger v. The PendaForm Co.,* ___ Fed. Appx. ___, 2019 WL 3035589, at *4-6 (6th Cir. July 11, 2019). "'[W]here different reasonable inferences may be drawn from undisputed facts, it is the province of the jury to determine from all the facts and circumstances whether one . . . has failed to perform.'" *Id.* at *5 (citing 17A Am. Jur. 2d *Contracts* § 590). Both parties present arguments supporting their view of the facts, but those arguments are more appropriately directed to a jury.

## C. <u>Breach of Implied Contract</u>

Tennessee courts recognize two type of implied contracts: contracts implied in fact and contracts implied in law, otherwise known as quasi contracts. *Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003). "A contract implied in fact is 'one that arises under circumstances which show mutual intent or assent to contract.'" *Id.* (quoting *Givens v. Mullikin,* 75 S.W.3d 383, 407 (Tenn. 2002)). In order to enforce a contract implied in fact, a plaintiff must show it is "supported by mutual assent, consideration, and lawful purpose." *Id.* "An express oral contract and a contract implied in fact are very similar with the primary difference between them being the manner in which the parties manifest their assent." *Id.* In an express oral contract, "the parties assent to the terms of the contract by means of words, writings, or some other mode of expression." *Id.* (quoting *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* 2002 WL

31302926, at *10 (Tenn. Ct. App. Oct.11, 2002)). In a contract implied in fact, "the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." *Id.*

Contracts implied in law "'are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice.'" *Id.* at 931 (quoting *Angus v. City of Jackson,* 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)). They "'can only arise in the absence of an actual contract or contract implied in fact.'" *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 906 (Tenn. Ct. App. 2009) (quoting *Overstreet v. TRW Commercial Steering Div.,* 256 S.W.3d 626, 632 (Tenn. 2008)). In order to recover under a contract implied in law, the following elements must be established:

> (1) There is no existing, enforceable contract between the parties covering the same subject matter;
>
> (2) The party seeking recovery proves that it provided valuable goods or services;
>
> (3) The party to be charged received the goods or services;
>
> (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
>
> (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Jones*, 308 S.W.3d at 906 (quoting *Ferguson v. Nationwide Prop. & Cas. Ins. Co.,* 218 S.W.3d 42, 50 (Tenn. Ct. App. 2006)).

For the reasons described above, there are genuine issues of disputed material fact as to whether the parties mutually assented to the terms of a contract. Accordingly, summary judgment is not appropriate as to an "implied in fact" contract claim. For those same reasons, there are genuine issues of material facts as to whether the parties had an existing, enforceable contract, and

as to whether TRG provided valuable services to Winnebago – the first two requirements for a contract implied-in-law. Accordingly, summary judgment is inappropriate as to that claim as well.

## D. <u>Fraudulent and Negligent Misrepresentation</u>

The Tennessee courts consider "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" to be different names for the same cause of action. *Hodge v. Craig,* 382 S.W.3d 325, 342 (Tenn. 2012). "To recover for intentional misrepresentation, a plaintiff must prove: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation." *Id.*, at 343. *See also Thompson v. Bank of America, N.A.,* 773 F.3d 741, 751 (6th Cir. 2014).

Negligent misrepresentation has been limited by the Tennessee courts to "'business or professional persons who negligently supply false information for the guidance of others in their business transactions.'" *Hodge,* 382 S.W.3d at 345. To recover for negligent misrepresentation, the plaintiff must prove: (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; (2) the defendant supplies faulty information meant to guide others in their business transactions*;* (3) the defendant fails to exercise reasonable care in obtaining or communicating the information;

7

and (4) the plaintiff justifiably relies upon the information. *Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn. 1997). *See also Thompson,* 773 F.3d at 752.

In responding to Defendant's Motion, TRG does not rely on a specific false statement made by Winnebago, but rather relies on its failure to disclose material information. Specifically, TRG contends Ms. Nielsen of Winnebago failed to disclose "she was not authorized to enter into contracts beyond certain monetary amounts, or that she expected a written contract to be proposed and then executed if TRG expected to be compensated." (Doc. No. 62, at 34). TRG argues it justifiably relied on Ms. Nielsen's nondisclosure because she was the officer with the most longevity at Winnebago.

As Winnebago points out in its reply brief, however, TRG did not allege misrepresentation by nondisclosure in its Complaint. The fraudulent misrepresentation claim asserted in the Complaint alleges Winnebago "falsely and intentionally misrepresented that it would pay TRG for TRG's analysis, assistance and introductions to Grand Design, inducing TRG to perform services." (Doc. No. 1 ¶ 51). The negligent misrepresentation claim alleges Winnebago "negligently supplied false information to TRG, including that it would pay TRG for TRG's analysis, assistance and introductions to Grand Design, inducing TRG to perform services." (*Id.* ¶ 57). These allegations do not include a failure to disclose, and TRG has not sought permission to amend the Complaint to add such a claim. Thus, the Court will not consider TRG's failure to disclose theory. *See, e.g., Tucker v. Union of Needletrades, Industrial, and Textile Employees,* 407 F.3d 784 (6th Cir. 2005) (refusing to consider merits of claim raised for the first time in response to the defendant's summary judgment motion.); *Rafferty v. Trumbull Cty., Ohio,* 758 Fed. Appx. 425, 429 (6th Cir. 2018) (same).

TRG does not attempt to support the misrepresentation claims as pled. Indeed, Mr. White of TRG testified he did not believe Ms. Nielsen told them anything she thought was false, and Ms. Thompson of TRG testified that she did not believe Ms. Nielsen behaved dishonorably in their dealings. (Plaintiff's Response to Facts ¶¶ 113, 114). As fraudulent misrepresentation requires the defendant to make a knowing or reckless false statement and negligent misrepresentation requires the defendant to supply faulty information meant to guide others, TRG has failed to present evidence creating a genuine issue of material fact supporting these claims. Accordingly, summary judgment is warranted on these claims.

**E. Unjust Enrichment**

In Tennessee, the elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Id.* "A plaintiff need not be in privity with a defendant to recover," but must demonstrate "that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Id.* A plaintiff need not show the defendant received a direct benefit in order to recover; "a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." *Id.*[2]

---

[2] The parties have not addressed the distinctions, if any, between TRG's "contract implied in law" claim and the claim for unjust enrichment. *See Cole v. Caruso,* 2018 WL 1391625, at *4 (Tenn. Ct. App. March 20, 2018) ("Our supreme court has generally held that '[a]ctions brought

9

As discussed above, there are disputed factual issues regarding whether TRG conferred a benefit on Winnebago, and whether Winnebago appreciated that benefit. These disputed factual issues preclude summary judgment on the unjust enrichment claim.

### IV. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 48) is granted in part, and denied in part.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same'" but the court has also "outlined separate and distinct elements applicable to each claim.") For purposes of summary judgment, the Court treats these claims as separate and distinct.